IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOSEPH T. WRIGHT,
d/b/a/ Cintrex

      Plaintiff,

v.                                 Case No. 6:15-1098-JTM-KGG

JACKIE McCLASKEY, in her official
capacity as Secretary of the Kansas
Department of Agriculture,

      Defendant.

**MEMORANDUM AND ORDER**

Plaintiff Joseph T. Wright, d/b/a Cintrex, brings suit against defendant Jackie McClaskey, in her official capacity as Secretary of the Kansas Department of Agriculture, seeking: (1) a declaratory judgment that K.A.R. 4-13-26 is invalid to the extent that it is preempted by the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq*., and the Sherman Antitrust Act, 15 U.S.C. §§ 1-7; (2) a temporary and permanent injunction directed at the Kansas Department of Agriculture prohibiting enforcement of K.A.R. 4-13-26 to the extent it is preempted by FIFRA and the Sherman Antitrust Act, including the enforcement of any actions to assess fines or penalties based on that that administrative regulation; and (3) attorney's fees, costs, and expenses. Dkt. 4.[1] Plaintiff also alleges unspecified violations of his First and Fourteenth Amendment rights under 42 U.S.C. § 1983. This matter is before the court on

---

[1] Plaintiff's original Complaint was filed on March 30, 2015. Dkt. 1. He filed the above-referenced Amended Complaint on April 21, 2015. Dkt. 4.

defendant's Motion to Dismiss (Dkt. 8).  For the reasons stated below, defendant's motion is granted.

## I.       Factual and Procedural Background

Plaintiff Wright, d/b/a Cintrex, has been a licensed pest control applicator in the State of Kansas since 1995.  Dkt. 4, at ¶¶ 4, 9.  At some point, he developed a program for pre-construction treatment for termites that is allegedly in compliance with FIFRA, is more economical, and has a smaller impact on the environment.  Dkt. 4, at ¶ 10.  This program, however, is *not* in compliance with K.A.R. 4-13-26.  Dkt. 4, at ¶ 10.  More specifically, it does not require application of the pesticide in a manner that establishes both horizontal and vertical barriers.  As a result, plaintiff has been fined multiple times by the State of Kansas for non-compliance.  Dkt. 4, at ¶ 10.

Plaintiff's claims revolve around very particular sections of the state regulations and FIFRA, namely, the portions that deal with exactly how pre-construction application of termite pesticide should be performed.  The relevant portions read as follows.

**4-13-7**. **Termite control applications procedures**.  (a) Except as provided in subsection (c), each structure shall be treated by applying pesticide at the rate, concentration, and dosage specified on the product label in a manner that provides wooden construction elements with protection from termites in the entire structure.  (b) Wood, paper scrap, cardboard scrap, and other cellulose-containing debris shall be removed from any accessible crawl space under the building to be treated.  (c) An application procedure different from that required by subsection (a) may be employed by a certified applicator.  When a different application procedure is used, the pest control operator shall furnish adequate control and shall state on the required written statement the application procedure used. These methods of control shall be requested or agreed to by the customer in writing before completion of application.  The applicator shall state, on the required statement of services and diagram, the application procedures used and how the procedures differ from the requirements of subsection (a).

**4-13-26. Preconstruction application of pesticide for termite control**.  *In addition to the requirements of the label*, each preconstruction application of

pesticide for the control of termites shall consist of establishing both horizontal and vertical chemical barriers, as specified in this regulation.  (a)  Horizontal chemical barriers shall be established in areas intended to be covered, including the soil beneath slab floors and porches, footing trenches for monolithic slabs, and the soil beneath stairs.  (b)  Vertical chemical barriers shall be established in the soil around the base of foundations, plumbing fixtures, foundation walls, support piers, and voids in masonry, and any other critical areas where structural components extend below grade.

K.A.R. §§ 4-13-7, 4-13-26 (emphasis added).  According to plaintiff, the "effect on the consumer of [§ 4-13-26] was to greatly increase both the cost and the exposure to soil borne chemicals . . . ."  Dkt. 4, at ¶ 15.

These regulations, plaintiff argues, are more restrictive than what is required by FIFRA and are "not required by the labels and in fact contradict the usage requirements approved by the [Environmental Protection Agency] on the product label."  Dkt. 4, at ¶ 15.  Under FIFRA, an applicator must only comply with the label requirements and a state may only alter these requirements as follows:

(a)  In general.  A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this Act.

(b)  Uniformity.  Such State shall not impose or continue in effect any requirements for *labeling or packaging* in addition to or different from those required under this Act.

(c)  Additional uses.

(1)  A State may provide registration for additional uses of federally registered pesticides formulated for distribution and use within that State to meet special local needs in accord with the purposes of this Act and if registration for such use has not previously been denied, disapproved, or canceled by the Administrator.  Such registration shall be deemed registration under section 3 for all purposes of this Act, but shall authorize distribution and use only within such State.

(2) A registration issued by a State under this subsection shall not be effective for more than ninety days if disapproved by the Administrator within that period. Prior to disapproval, the Administrator shall, except as

3

provided in paragraph (3) of this subsection, advise the State of the Administrator's intention to disapprove and the reasons therefor, and provide the State time to respond. The Administrator shall not prohibit or disapprove a registration issued by a State under this subsection (A) on the basis of lack of essentiality of a pesticide or (B) except as provided in paragraph (3) of this subsection, if its composition and use patterns are similar to those of a federally registered pesticide.

(3) In no instance may a State issue a registration for a food or feed use unless there exists a tolerance or exemption under the Federal Food, Drug, and Cosmetic Act that permits the residues of the pesticide on the food or feed. If the Administrator determines that a registration issued by a State is inconsistent with the Federal Food, Drug, and Cosmetic Act, or the use of, a pesticide under a registration issued by a State constitutes an imminent hazard, the Administrator may immediately disapprove the registration.

(4) If the Administrator finds, in accordance with standards set forth in regulations issued under section 25 of this Act, that a State is not capable of exercising adequate controls to assure that State registration under this section will be in accord with the purposes of this Act or has failed to exercise adequate controls, the Administrator may suspend the authority of the State to register pesticides until such time as the Administrator is satisfied that the State can and will exercise adequate controls. Prior to any such suspension, the Administrator shall advise the State of the Administrator's intention to suspend and the reasons therefor and provide the State time to respond.

7 U.S.C. § 136v.

Plaintiff alleges that the additional Kansas requirements "ignore modern construction techniques that employ large amounts of building materials that are immune to termites, such as steel, glass and concrete, with only limited amounts of wood in isolated areas, such as the gym floor in a school." Dkt. 4, at ¶ 22.  He also alleges that the state regulations require treatment "of structures which do not provide access to termites to wood, such as pillars that do not penetrate the slab and footers buried more than four feet deep." Dkt. 4, at ¶ 22.  Rather, the regulations were implemented solely to "level the playing field" and make "all competitors perform a complete service," even if not required by federal law.  Dkt. 4, at ¶ 23.

4

On June 23, 2015, and in response to plaintiff's Amended Complaint, defendant filed a Motion to Dismiss citing three grounds for dismissal: (1) lack of jurisdiction pursuant to *Younger v. Harris*, 401 U.S. 37 (1971); (2) *res judicata*; and (3) failure to state a claim for relief. Dkt. 9.

## II.      Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions. *Iqbal*, 556 U.S. at 678-79.

## III.      Discussion

The court shall proceed to defendant's argument on the application of the *Younger* abstention doctrine, as it finds the argument to be dispositive.

Under *Younger* and its progeny,

> [a] federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings "involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."

*Brown ex rel. Brown v. Day*, 555 F.3d 882, 887 (10th Cir. 2009) (quoting *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997)).[2]   When considering these conditions, the court "must be sensitive to the competing tension between protecting federal jurisdiction and honoring principles of Our Federalism and comity." *Id.* (quoting *Taylor*, 126 F.3d at 1296).   The court *must* keep in mind that abstention "is the exception, not the rule, and hence should be rarely . . . invoked, because the federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them." *Id.* at 887-88 (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)).   Yet, *Younger* abstention is "non-discretionary . . . absent extraordinary circumstances, if the three conditions are indeed satisfied." *Id.* at 888 (quoting *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999)).

**A.    Whether there is an Ongoing State Proceeding**

The first prong of the *Younger* inquiry involves two sub-parts.   First, the court "must determine whether there is an ongoing state proceeding." *Brown*, 555 F.3d at 888 (citing *Amanatullah*, 187 F.3d at 1163-64); *see also Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1242 (10th Cir. 2001).   Second, the court must determine "whether that proceeding is the type of state proceeding that is due the deference accorded by *Younger* abstention." *Id.*

---

[2] The *Younger* doctrine was specifically applied to state administrative proceedings in *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 n.2 (1986).

(citing *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans ("NOPSI")*, 491 U.S. 350, 369 (1989)).

### 1.     Whether the proceeding is "ongoing"

Defendant first argues that plaintiff, and the very claims he makes in this court, are subject to underlying ongoing state administrative proceedings.  It appears that plaintiff has a long history of non-compliance with, among other things, the exact statute of which he currently complains.   In affidavits attached to its Motion to Dismiss and Reply, defendant cites, and provides documentation for, seven previous enforcement actions brought by the Kansas Department of Agriculture against plaintiff.  Dkt. 19-1.  Of particular interest are the four most recent actions: 12 PEST 7380, 13 PEST 7381, 13 PEST 8370, and 15 PEST 11591.  In each of the first three actions, plaintiff was found to be in violation of K.A.R. 4-13-26 and assessed fines of $6,000, $11,000, and $11,000, respectively.  Dkt. 19-1, at 8-18.  In 15 PEST 11591, an action in which an order was just issued on August 13, 2015, plaintiff's Pesticide Business License and Commercial Applicator Certification were revoked for non-compliance and non-payment of fines.  Dkt. 19-1.  Per the order, plaintiff has eighteen (18) days to appeal this decision. Dkt. 19-1.

At the time of *this* court's decision, it is unknown whether plaintiff has sought administrative appeal in 15 PEST 11591.[3]  However, such knowledge is not necessary for the court to make its decision as to whether *Younger* applies.

Plaintiff's response to defendant's Motion to Dismiss does little to refute defendant's argument in favor of applying *Younger*.  Rather, plaintiff combines his response to defendant's argument in favor of *Younger's* application and *res judicata* and states as follows:

---

[3] A check of the Kansas Department of Agriculture website at the time this court entered its Memorandum and Order reveals that plaintiff's license is still listed as "active."

The response of the plaintiff to the above two issues is the same.  These arguments are not directed to the merits of the plaintiff's claims, but to who the plaintiff is.  Because the issues presented are related to environmental safety, the plaintiff has always averred that K.A.R. § 4-13-26 which mandates that all of a facility under construction, no matter its construction material be treated, both horizontally and vertically, imposes an over burdensome load of pesticides on the environment at an unnecessary cost to the consumer, others are willing to take up his standard as well.  Others who have never been involved with litigation with the Kansas Department of Agriculture, and others who object to the scope of K.A.R. § 4-13-26.  A *Motion to Amend the Complaint to Add Additional Parties Plaintiff* has been filed contemporaneously herewith, in which Autumn L. Johnson, a consumer of pest control treatments through her children's use of over treated schools has volunteered to have her name endorsed as a party plaintiff, as has Ralph Rogerson, who is licensed by the state of Kansas as a Commercial Pesticide Applicator, but who unlike the plaintiff has never been the subject of the described disciplinary actions.  The addition of these parties plaintiff should cure both the abstention and *res judicata* arguments.

Dkt. 14, at 2-3 (italics in original).

The obvious problem with plaintiff's response is that, despite being granted the chance to file an Amended Complaint, he has *never* actually done so.  Plaintiff requested, and was granted, the opportunity to amend his Amended Complaint on August 5, 2015.  Dkt. 16.  Magistrate Judge Kenneth G. Gale granted plaintiff two weeks, or until August 19, 2015, to file such an amended complaint.  Dkt. 16.  Plaintiff failed to do so.  As such, this court is obligated to look only to the previously filed Amended Complaint (Dkt. 4) to resolve defendant's Motion to Dismiss.

Of interest to the court is the fact that plaintiff seemingly does not deny, in his Response, that he is the subject of ongoing state administrative litigation.  Furthermore, an affidavit submitted by Ronda Hutton, a legal assistant and the duly authorized custodian of the business records of the legal division of the Kansas Department of Agriculture, affirms that, as of September 1, 2015, 15 PEST 11591 was presently pending before the Department.  Dkt. 19-1, at 1-2.

In *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 595 (1975), the plaintiff filed a federal § 1983 action to enjoin, on constitutional grounds, enforcement of a state court civil judgment against him declaring that his theater was a nuisance because it showed pornographic films.  At the time the plaintiff filed his federal action, his time to directly appeal the state trial court judgment had not yet run its course.  *Huffman*, 420 U.S. at 608.  The Supreme Court held that this fact was not critical to its application of the *Younger* doctrine:

> We need not, however, engage in such inquiry.  For regardless of when the Court of Common Pleas' judgment became final, we believe that a necessary concomitant of *Younger* is that a party in appellee's posture must exhaust his state appellate remedies before seeking relief in the District Court, unless he can bring himself within one of the exceptions as specified in *Younger*.

*Id*.  This conclusion demonstrates the Court's focus on the core *Younger* concerns of: "(1) whether the federal action was 'duplicative,' (2) whether it cast a 'direct aspersion on the capabilities and good faith of state appellate courts,' (3) whether it was 'disruptive' of the State's important interests, and (4) whether the federal action was 'designed to annul the result of [the] state trial.'"  *Moore v. City of Asheville*, 396 F.3d 385, 394 (4th Cir. 2005) (quoting *Huffman*, 420 U.S. at 608-09).

It is therefore clear that, as long as plaintiff has the opportunity to appeal, or, for that matter, *chooses* to appeal, the most recent decision of the Kansas Department of Agriculture, he is engaged in an "ongoing state proceeding."  *See Brown*, 555 F.3d at 888.  Moreover, *even if* the time for appeal lapses without any action from plaintiff, abstention is still the appropriate outcome.

In *Moore v. City of Asheville*, 396 F.3d 385 (4th Cir. 2005), the Fourth Circuit dealt with nearly an identical situation to the one now before this court.  There, the plaintiff sought federal court intervention apparently *after* a state administrative judgment regarding the plaintiff's

violation of a noise ordinance had become non-appealable by reason of the plaintiff's failure to

timely take available avenues of review.  *Moore*, 396 F.3d at 394.  The Fourth Circuit, citing

*Huffman*, held that

> To apply *Younger* to this circumstance might stretch *Huffman* slightly beyond its
> strict holding.  But we conclude that any differences between the timing in this
> case and in *Huffman* do not alter the proper legal analysis.  We continue to focus
> on *Younger's* policy of commanding federal restraint when the federal action is
> duplicative, casts aspersion on state proceedings, disrupts important state
> enforcement efforts, and is designed to annul a state proceeding.
>
> By initiating this suit in federal court after the state administrative agency
> determined that he had violated the noise disturbance ordinance, Moore seeks to
> relitigate a dispute that has already been resolved and to receive as damages the
> amounts that he paid as fines.  Moreover, to the extent that Moore in this case
> seeks to annul or trample on the results of state administrative proceedings, he
> interferes with the State's interest in enforcing its substantive laws as well as its
> interest in enforcing those laws through available administrative procedures and
> in its own courts.  That Moore did not avail himself of state-provided avenues for
> review can only cast aspersion on the State's "capabilities and good faith," and
> deprive the State of "a function which quite legitimately is left [to the state
> appellate bodies], that of overseeing [agency] dispositions of constitutional issues
> which arise in civil litigation over which they have jurisdiction."  Federal court
> intervention would also disrupt the City's efforts to enforce its substantive policy
> against noise disturbances.

*Id.* at 394-95.

The Fourth Circuit went on to apply *Huffman's* holding in the context of an

administrative proceeding, pointing to the Supreme Court's ruling in *Ohio Civil Rights

Commission*.  As noted above, in *Ohio Civil Rights Commission*, the Supreme Court applied

*Younger* to pending state administrative proceedings.  477 U.S. at 627-28 n.2.  The *Moore* court

therefore held that "the rationale behind the [Supreme] Court's holding in *Ohio Civil Rights

Commission* [is] equally applicable where the administrative proceedings are no longer pending

because of the plaintiff's failure to exhaust his administrative appellate remedies."  *Moore*, 396

F.3d at 395-96.

Therefore, *especially* if plaintiff's opportunity for and/or actual administrative appeal is still pending, and *regardless* of whether the time for such appeal has expired without plaintiff taking action, plaintiff's current federal action is exactly the type of "ongoing state proceeding" that *Younger* references and for which abstention is appropriate.

### 2.    The "type" of proceeding

The Tenth Circuit, as many of its sister circuits, has outlined a test to determine whether an administrative proceeding is due *Younger* deference, i.e., whether the underlying administrative proceeding is the "type" of state proceeding that would lend itself to *Younger* deference. In *Brown*, the Circuit distinguished between *remedial* proceedings, to which *Younger* does not apply, and *coercive* proceedings, to which it does apply. *Brown* identified the following factors as relevant to the determination of whether an administrative proceeding is remedial or coercive in nature:

> (1) whether the state proceeding is an option available to the federal plaintiff on [his] own initiative to redress a wrong inflicted by the state or whether the participation of the federal plaintiff in the state administrative proceeding is mandatory; (2) whether the state proceeding is itself the wrong which the federal plaintiff seeks to correct via injunctive relief under section 1983; and (3) whether the federal plaintiff has committed an alleged bad act.

*Columbian Fin. Corp. v. Stork*, 2014 U.S. Dist. LEXIS 162318, at *11-12 (D. Kan. Nov. 18, 2014) (citing *Brown*, 555 F.3d at 890-91).

Here, each of these factors points toward the conclusion that the underlying administrative action was coercive and thus the type of state proceeding that is due the deference accorded by *Younger* abstention. First, plaintiff was required to participate in 15 PEST 11591, as it was brought against him both for statutory non-compliance and non-payment of previously assessed fines. Second, although not inherently clear from the pleadings, the state proceeding is likely itself the wrong that plaintiff seeks to correct through his request for injunctive relief

11

because he is continuously incurring violations for failure to comply with state regulations. Finally, plaintiff has committed an alleged bad act not only through his statutory non-compliance, but also his subsequent non-payment of previously issued fines.

The court therefore finds that this is the "type" of state proceeding that is due the deference accorded by *Younger* abstention.

**B.     Existence of an adequate state forum**

The second element of *Younger* requires the existence of an adequate state forum for resolving the case.  "*Younger* requires that [a plaintiff] have an 'opportunity to raise and have timely decided by a competent state tribunal the federal issues involved.'"  *Norris v. Johnson Cty. Prob. & Juvenile Court*, 2010 U.S. Dist. LEXIS 27094, at *8 (D. Kan. Mar. 22, 2010) (quoting *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n.*, 457 U.S. 423, 432 (1982)). In Kansas, state district courts are courts of general jurisdiction.  K.S.A. § 20-301.  "State courts of general jurisdiction are generally competent to adjudicate claims that involve such federal statutes as Section 1983."  *Id.* at *10 (citing *Nev. v. Hicks*, 533 U.S. 353, 366 (2001)).  Moreover, the state court may properly hear an appeal of an administrative proceeding which challenges an agency action, or a statute or rule and regulation on which the agency action is based, as unconstitutional on its face or as applied.  *See* K.S.A. § 77-621(c)(1).  The state court is also the proper forum for any challenges to an administrative proceeding where the agency's decision is cited as being contrary to federal law.  *See* K.S.A. § 77-621(c)(4).  Further, the state court is permitted to award plaintiff the injunctive and declaratory relief which he now seeks in federal court.  *See* K.S.A. § 77-622(b).

Therefore, the second requirement of *Younger* is met because the state court provides an adequate forum to hear the claims raised in plaintiff's federal complaint.

C.      **Important state interests**

As to the third element, an important state interest, the Supreme Court has long recognized the "historic primacy of state regulation of matters of health and safety." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). The spraying of any pesticide surely invokes such health and safety concerns. The court therefore finds that the third *Younger* element is satisfied.

Where the three *Younger* requirements are satisfied, the court must abstain unless extraordinary circumstances exist. *Amanatullah*, 187 F.3d at 1163. The Tenth Circuit has clarified that at least two varieties of "extraordinary circumstances" exist: "(1) where the plaintiff makes a showing of bad faith or harassment by state officials responsible for the prosecution or enforcement action and (2) where the state law or regulation to be applied 'is flagrantly and patently violative of express constitutional prohibitions.'" *Brown*, 555 F.3d at 888 n.4 (quoting *Trainor v. Hernandez*, 431 U.S. 434, 442 n.7 (1977)). Nothing in plaintiff's Amended Complaint suggests that extraordinary circumstances exist in this case which would allow this court to interfere in the ongoing state administrative proceedings. Nor does plaintiff allege such extraordinary circumstances in his Response.

The court therefore finds that the three conditions for *Younger* abstention are met and that the abstention doctrine applies to the forms of relief sought by plaintiff. Consequently, this court must abstain from hearing plaintiff's claims in this action.

Because the court finds that abstention is appropriate, it declines to address defendant's other articulated grounds for dismissal.

**IT IS THEREFORE ORDERED** this 3rd day of September, 2015, that defendant's

Motion to Dismiss (Dkt. 6) is hereby granted for lack of subject matter jurisdiction.

<u>s/ J. Thomas Marten</u>
J. THOMAS MARTEN, JUDGE